Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ROBERTO CARROCCIA<br><br>Parte Recurrida<br><br>v.<br><br>GULLERMO JOSÉ DE PEDRO MONTES, POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANACIALES COMPUESTA CON GARDILU TORRES BLONDET<br><br>**MYRNA ROMERO** EN SU CARÁCTER PERSONAL, EN SU CARÁCTER OFICIAL COMO PRESIDENTA DE LA JUNTA DEL CONDOMINIO VILLAS DE PARKVILLE II, Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA CON JOHN DOE; **CONSEJO DE TITULARES CONDOMINIO VILLAS DE PARKVILLE II** Y OTROS<br><br>Parte Peticionaria | KLCE202401194 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.:<br>GB2023CV00808<br><br>Sobre:<br>Acción Civil |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de febrero de 2025.

Comparece el Consejo de Titulares del Condominio Villas de Parkville II (Consejo de Titulares) y la señora Myrna Romero Marrero (señora Romero) solicitando que revoquemos la *Resolución y Orden* dictada el 16 de agosto de 2024, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Bayamón.[1] Mediante el referido dictamen, el foro primario denegó la *Moción de*

---

[1] Apéndice del *Certiorari*, Anejo 1, págs. 1-12.

*Desestimación* presentada al amparo de la Regla 10.2 de la de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, por el Consejo de Titulares y la señora Romero.[2]

Con el beneficio del alegato en oposición de la parte recurrida, señor Roberto Carroccia, y tras un estudio detenido del expediente de autos, resolvemos expedir del auto de *certiorari.*

**I.**

El presente caso se originó el 14 de septiembre de 2023, cuando el señor Roberto Carroccia (señor Carroccia) presentó una demanda, sobre acción resolutoria, daños por vicios de construcción, impericia profesional, recisión de contrato, y daños y perjuicios por causa de dolo, en contra de los codemandados de epígrafe.[3] Lo anterior está relacionado a la compra que el demandante efectuó el 29 de agosto de 2022 sobre el apartamento EK-PH1 del Condominio Villas de Parkville II en Guaynabo.

En su demanda, el señor Carroccia alegó que, desde el 8 de marzo de 2022, los codemandados tienen una Carta Técnica realizada por los ingenieros de la firma SPEC Group, LLC, en la que se enumeraron problemas estructurales y de suelo, tanto en las edificaciones del Condominio Villas de Parkville II como en áreas aledañas, y las recomendaciones que se tenían que seguir para mitigar dicha situación.

El señor Carroccia específicamente le imputó al codemandado Guillermo José De Pedro Montes, vendedor del apartamento, y su esposa, la señora Gardilú Torres Blondet (matrimonio De Pedro-Torres), haber incurrido en dolo grave al mantener silencio durante el proceso de compraventa y no divulgar la existencia de los alegados problemas estructurales y de suelo que afectaban al edificio, con el fin de efectuar la transacción. Afirmó que el

---

[2] *Íd.,* Anejo 2, págs. 13-16.
[3] *Íd.,* Anejo 3, págs. 17-27.

codemandado Guillermo José De Pedro Montes (De Pedro Montes) conocía la situación por ser el vicepresidente de la Junta de Directores del Condominio.[4]

En cuanto a los codemandados Consejo de Titulares y la señora Romero, presidenta de la Junta de Directores del Condominio, el señor Carroccia reclamó que éstos incurrieron en dolo grave al no haber provisto durante el proceso de compra del apartamento información relacionada con los problemas estructurales y de suelo existentes.

También, el señor Carroccia adujo que Sun West Mortgage Company (acreedor hipotecario) tenía conocimiento del informe preparado por la firma SPEC y de la propuesta sometida por SALO Engineering para detener la inestabilidad del terreno en el complejo de viviendas, más ésta no divulgó la información previo al cierre de la compraventa del apartamento.[5] Por último, le imputó responsabilidad a la señora Erica Mariel García Rodríguez (corredora de bienes raíces) al no velar por sus intereses en la transacción.

Relató el señor Carroccia que el 17 de septiembre de 2022 -luego de haber adquirido el apartamento EK-PH1 del Condominio- ocurrió un derrumbe del muro de retención que empeoró el socavamiento de los predios del condominio y destruyó las líneas de agua y alcantarillado. Expuso que no fue hasta que Manejo de Emergencias desalojó el edificio que él supo de los problemas que tenía la estructura, mismos que le fueron ocultados de manera dolosa.[6] Añadió que, a la fecha de la presentación de la demanda, varias unidades, incluyendo la suya, permanecían desalojadas.[7] El señor Carroccia aseveró que las circunstancias lo obligaron a

---

[4] *Íd.,* Anejo 3, pág. 21.
[5] *Íd.,* Anejo 3, pág. 23.
[6] *Íd.*
[7] *Íd.*

alquilar otro apartamento, cuyos cánones paga al mismo tiempo que liquida las mensualidades del préstamo hipotecario del apartamento EK-PH1 de Villas de Parkville II.[8] Afirmó que, si le hubiesen informado de los problemas que enfrentaba el edificio, nunca hubiera comprado el apartamento.[9] Por lo anterior, el señor Carroccia solicitó al tribunal que declarase la nulidad de la compraventa por razón de dolo grave de parte del matrimonio De Pedro-Torres, así como la hipoteca y el correspondiente pagaré. También el señor Carroccia requirió que se le devolvieran todas las sumas pagadas por concepto de la transacción y que se condenara a los codemandados, de manera solidaria, al pago de los daños y perjuicios causados y las sumas que haya tenido que pagar por concepto de rentas del apartamento alquilado.[10]

El 8 de enero de 2024, los codemandados Consejo de Titulares y la señora Romero, presentaron una *Moción de desestimación* al amparo de la Regla 10.2 (5) de Procedimiento Civil.[11] Alegaron que las alegaciones que el señor Carroccia incluyó en cuanto a dichos codemandados no constituían una reclamación que justificara la concesión de un remedio. En lo atinente, esgrimieron que éstos no intervinieron en las negociaciones y en la decisión del demandante de adquirir el apartamento.[12] Mencionaron que no tenían una obligación en ley de informarle al señor Carroccia, sin éste haberlo requerido, los problemas estructurales del condominio.[13] Puntualizaron que, de las propias alegaciones de la demanda, surgía que le proveyeron al acreedor hipotecario la información sobre el condominio, incluyendo los informes por SPEC y SALO.[14] Por lo

---

[8] *Íd.*
[9] *Íd.*
[10] *Íd.,* Anejo 3, págs. 26-27.
[11] *Íd.,* Anejo 5, págs. 34-47.
[12] *Íd.,* Anejo 5, pág. 39.
[13] *Íd.,* Anejo 5, pág. 35.
[14] *Íd.*

anterior, solicitaron al tribunal desestimara las alegaciones en su contra.[15]

El 27 de febrero de 2024, el señor Carroccia presentó una *Moción en Oposición a Desestimación.*[16] Arguyó que el Consejo de Titulares y la señora Romero conocían sobre los defectos estructurales del condominio y áreas aledañas y -como autoridad en administrar el mismo y aprobar obras extraordinarias para su buen funcionamiento- tenían el deber de advertir a los titulares de los defectos estructurales del edificio conforme la *Ley de Condominios de Puerto Rico*, Ley Núm. 129-2020, 31 LPRA sec. 1921a *et seq.*[17] De tal forma, el señor Carroccia manifestó que la demanda contenía alegaciones específicas y suficientes con una causa de acción válida en contra del Consejo de Titulares y la señora Romero.[18] Por tanto, solicitó que se denegase la solicitud de desestimación promovida por los mencionados codemandados.[19]

El 28 de febrero de 2024, la señora Romero y el Consejo de Titulares instaron *Réplica a Oposición a Moción de Desestimación.*[20] Alegaron que, a tenor con la Ley de Condominios, *supra*, ellos no tenían un deber jurídico de advertirle al señor Carroccia sobre los defectos estructurales del condominio, ya que éste era un comprador y no era dueño del apartamento, al momento en que alegó los hechos negligentes por parte de éstos.[21] Mencionaron que los deberes del Consejo de Titulares hacia los titulares surgen luego de la compra del apartamento y no se retrotraen previo a dicho suceso.[22] Añadieron que el señor Carroccia tampoco les solicitó información sobre el estado del Condominio previo a la adquisición

---

[15] *Íd.*
[16] *Íd.,* Anejo 7, págs. 62-69.
[17] *Íd.,* Anejo 7, pág. 65.
[18] *Íd.,* Anejo 7, pág. 68.
[19] *Íd.*
[20] *Íd.,* Anejo 8, págs. 70-73.
[21] *Íd.,* Anejo 8, págs. 71.
[22] *Íd.*

del apartamento.[23]  Asimismo, la señora Romero y el Consejo de Titulares aseguraron que han llevado a cabo actos dirigidos para corregir el problema del muro de contención.[24]  A su vez, recalcaron que estos no tienen ningún deber de informar a potenciales compradores, sin solicitud previa, sobre el estado del condominio.[25]  Por esto, reiteraron que procedía desestimar la demanda en su contra.[26]

El 16 de agosto de 2024, el TPI emitió y notificó la *Resolución y Orden* en la que denegó la solicitud de desestimación presentada por el Consejo de Titulares y la señora Romero, por considerarla prematura.  Así, el foro primario dispuso que:

> Primeramente, surgen de un análisis de la *Demanda* hechos demostrativos de que la parte demandante, el Sr. Roberto Carroccia, podría tener derecho a un remedio contra la parte demandada.  El Tribunal, tomando como ciertos los hechos bien alegados en la *Demanda* y de la manera más favorable para el demandante, únicamente para propósito de la solicitud de desestimación, determinan (sic) que existen posibles causas de acción en contra de la parte demandada y que el Sr. Roberto Carroccia tenga derecho a remedios a su favor.  Asimismo, enfatizamos que no estamos pasando juicio alguno sobre los méritos de los planteamientos esbozados.  Destacamos que, evaluado el expediente en su totalidad, nos encontramos en una etapa procesal, en la cual el Consejo de Titulares y la Sra. Myrna Romero aún no han presentado una Contestación a la *Demanda*, por lo que ni tan siquiera se ha comenzado el descubrimiento de prueba entre las partes.  Por la misma razón, resulta forzoso concluir que los codemandados no han podido demostrar, a satisfacción del Tribunal, que la parte demandante no tiene derecho alguno bajo ningún supuesto de hecho.
>
> [...]
>
> Dado lo anterior, entendemos que es prematuro desestimar la presente acción, bajo los fundamentos solicitados.  Entendemos que, el presente asunto, requiere la continuación de los procedimientos, para darle la oportunidad al demandante de probar sus alegaciones.
>
> El Tribunal, luego de leer las alegaciones de la *Demanda,* puede determinar, de manera certera e incuestionable, que en este caso, existen controversias

---

[23] *Íd.*
[24] *Íd.*
[25] *Íd.*
[26] *Íd.,* Anejo 8, pág. 72.

de hechos que impiden que se resuelva en esta etapa de los procedimientos.[27]

Ante lo resuelto, el TPI concedió al Consejo de Titulares y a la señora Romero término para contestar la demanda.

El 3 de septiembre de 2024, la señora Romero y el Consejo de Titulares instaron *Moción de reconsideración y/o para determinaciones adicionales.*[28] El 30 de septiembre de 2024, el TPI emitió y notificó una *Resolución* en la cual declaró *No Ha Lugar* a la solicitud de reconsideración.[29]

Inconforme, el 30 de octubre de 2024, el Consejo de Titulares y la señora Romero incoaron el presente recurso de *certiorari* e imputaron al TPI el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al declarar sin lugar la solicitud de desestimación de la parte peticionaria cuando, aun dando por ciertas y correctas todas las alegaciones de la demanda, el demandante no tiene remedio bajo ley alguna.

Por su parte, en el *Alegato en Oposición,* presentado el 18 de febrero de 2025, el Sr. Carroccia reiteró que procedía confirmar la determinación recurrida porque la demanda contiene alegaciones suficientes en derecho para -en esta etapa del proceso judicial- configurar una causa de acción en contra del Consejo de Titulares y la señora Romero, y derrotar la moción al amparo de la Regla 10.2 de Procedimiento Civil, *supra.*

**II.**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[30]

---

[27] *Íd.,* Anejo 1, págs. 10-11.
[28] *Íd.,* Anejo 10, págs. 79-87.
[29] *Íd.,* Anejo 2, págs. 13-16.
[30] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V.[31]   Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia.  Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención.  Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[31] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.*, 202 DPR 478, 486 (2019).

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[32]

Lo anterior impone a este foro la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[33]  Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

Las *alegaciones* son "los escritos mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas".[34]  Su propósito es "notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes".[35]  Por

---

[32] *Torres González v. Zaragosa Meléndez*, 211 DPR 821, 849 (2023).
[33] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[34] *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1061 (2020), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2202, pág. 279.
[35] *Íd.,* pág. 1062.

tanto, cualquier alegación mediante la cual una parte solicite un remedio – por ejemplo, una demanda – incluirá una relación sucinta y sencilla de los hechos que demuestran que procede el remedio solicitado y la solicitud del remedio que se alega debe concederse.[36]

Por su parte, la Regla 10.2 de Procedimiento Civil[37], permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra.  La mencionada regla establece lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;**
> (6) dejar de acumular una parte indispensable.[38]

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante.[39]  Dentro del ejercicio de su discreción, el foro primario no deberá desestimar la demanda a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[40]  Es decir, la desestimación procede cuando de los hechos bien alegados en la demanda no se puede identificar una

---

[36] Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1.
[37] 32 LPRA Ap. V, R. 10.2.
[38] *Íd.* (Énfasis suplido).
[39] *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013).
[40] *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

relación entre los hechos alegados y el derecho sustantivo que genera la responsabilidad del demandado hacia el demandante.[41] Cónsono con lo anterior, a pesar de interpretar liberalmente la demanda, corresponde la desestimación si no hay remedio alguno disponible en nuestro estado de derecho.[42]

Por consiguiente, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida.[43]

## C.

El Artículo 1060 del *Código Civil de Puerto Rico*, Ley Núm. 55-2020, define la *obligación* como "el vínculo jurídico de carácter patrimonial en virtud de la cual el deudor tiene el deber de ejecutar una prestación que consiste en dar, hacer o no hacer algo en provecho del acreedor, quien, a su vez, tiene un derecho de crédito para exigir el cumplimiento".[44]

El Artículo 1063 del mismo cuerpo reglamentario establece que son fuentes de las obligaciones: (a) la ley; (b) los contratos;(c) los cuasicontratos;(d) los actos ilícitos;(e) los actos u omisiones en que interviene culpa o negligencia; y (f) cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico.[45]

En cuanto a la obligación de hacer, ésta "es aquella cuyo objeto consiste en realizar un acto o en prestar un servicio".[46] En la obligación de hacer, la prestación del deudor puede consistir en "[r]ealizar cierta actividad, con la diligencia apropiada, pero independientemente de su éxito".[47] El deudor incurrirá en culpa o negligencia si omite la diligencia que exige la naturaleza de la

---

[41] *Torres, Torres* v. *Serrano Torres,* 179 DPR 481, 501 (2010).
[42] *Ortiz Matías et al.* v. *Mora Development*, 187 DPR 649, 654 (2013).
[43] *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 505.
[44] 31 LPRA sec. 8981.
[45] 31 LPRA sec. 8984.
[46] Artículo 1077 del *Código Civil de Puerto Rico*, 31 LPRA sec. 9012.
[47] Artículo 1078 del *Código Civil de Puerto Rico*, 31 LPRA sec. 9013.

obligación.[48]  Cuando la obligación no expresa la diligencia que deba presarse en su cumplimiento, se exige la que corresponde a una persona prudente y razonable.[49]  Además, la responsabilidad que procede de la negligencia es exigible en el cumplimiento de toda clase de obligaciones.[50]

En otro extremo, el dolo "consiste en el incumplimiento deliberado y de mala fe de la obligación".[51]

**D.**

El Artículo 3 de la *Ley de Condominios de Puerto Rico*, Ley Núm. 129-2020, 31 LPRA sec. 1921a *et seq.*, define al *Consejo de Titulares* como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares".[52]  El Consejo de Titulares tiene personalidad jurídica propia y de sus obligaciones frente a terceros, responden los titulares de forma subsidiaria y sólo con su apartamento.[53]

Según el Artículo 49 de la Ley de Condominios, corresponde al *Consejo de Titulares* elegir, por el voto afirmativo de la mayoría, las personas que habrán de ocupar los cargos de la *Junta de Directores.*[54]  También le corresponde al *Consejo de Titulares* "[i]ntervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas necesarias y convenientes para el mejor servicio común".[55]

En cuanto al grado de responsabilidad de los directores que componen la Junta de Directores dicho artículo establece que "[l]os directores responderán personalmente por sus acciones mientras actúen como tales, sólo cuando incurran en delito, fraude o

---

[48] Artículo 1163 del *Código Civil de Puerto Rico,* 31 LPRA sec. 9315.
[49] *Íd.*
[50] *Íd.*
[51] Artículo 1164 del *Código Civil de Puerto Rico,* 31 LPRA sec. 9316.
[52] 31 LPRA sec. 1921b (h).
[53] Artículo 48 de la *Ley.* 31 LPRA sec. 1922t.
[54] 31 LPRA sec. 1922u (a) (1).
[55] 31 LPRA se. 1922u (i).

negligencia crasa, siendo el Consejo de Titulares quien posee la causa de acción para reclamar la violación fiduciaria. En cualquier otro caso en que se le imponga responsabilidad pecuniaria a un titular por sus gestiones como director, el Consejo de Titulares cubrirá dichos gastos".[56]

Por su parte, la *Junta de Directores* es aquel "Director o grupo de Directores electos por el Consejo de Titulares".[57] En general, dicho cuerpo directivo tiene el deber de "[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a esos efectos las oportunas advertencias y apercibimientos a los titulares".[58]

De otro lado, la Ley de Condominios indica que el *adquirente voluntario* es aquella "[p]ersona que, luego de ejercer su criterio en el curso usual de los negocios, deliberadamente adquiere el bien inmueble porque le resulta un buen negocio".[59]

En lo que concierne a las reglas que gobiernan el uso de los apartamentos, el Artículo 39 de la Ley de Condominios indica en su acápite (10) que "[e]l adquirente de un apartamento, acepta la condición manifiesta de los elementos comunes del condominio en la forma en que éstos se encuentren físicamente al momento de adquirir. A este adquirente se le atribuirá el conocimiento de los cambios manifiestos que existan en el inmueble para todos los efectos de la tercería registral".[60]

### III.

Expedimos el auto de *certiorari* conforme a la autoridad que nos concede la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, cuando se recurre de la denegatoria de una moción de carácter

---

[56] 31 LPRA sec. 1922u (a) (1).
[57] 31 LPRA sec. 1921b (p).
[58] Artículo 53 de la *Ley,* 31 LPRA sec. 1922y (a).
[59] 31 LPRA sec. 1921b (c).
[60] 31 LPRA sec. 1922k (10).

dispositivo y los criterios (A) (E) y (G) de la Regla 40 de nuestro Reglamento, *supra*, R.40.

El Consejo de Titulares y la señora Romero alegan que el TPI incidió al desestimar las alegaciones presentadas en su contra y resolver que los hechos alegados exponen una reclamación que justifica la concesión de algún remedio en contra de éstos. Veamos.

En lo que respecta al Consejo de Titulares y la señora Romero, el señor Carroccia alegó en su demanda que:

> 2.2 En algún momento con anterioridad al 10 de febrero de 2022 surgió la preocupación entre titulares del condominio, y en particular, en la Junta de Directores, en adelante "la Junta", sobre la condición de un muro de retención que ubica en los predios y su relación con unos asentamientos, cavidades y grietas que se observaban en aceras, áreas de rodaje y escaleras del complejo. A los fines de entender las razones de los problemas observados, la Junta, por conducto de la señora Marisol Navas, contrató el 10 de febrero de 2022, a la firma de ingeniería SPEC Group. LLC, en adelante "SPEC", para que evaluara la situación y rindiera un informe.

> 2.3 El 8 de marzo de 2022 personal de SPEC realizó un reconocimiento visual de las facilidades del condominio, prestando atención a la situación del muro de retención, las aceras, el área de rodaje y las escaleras. De las observaciones realizadas en su visita al condominio, SPEC rindió una "carta técnica" o informe, a la Junta, donde desglosó lo observado y dio una serie de recomendaciones para resolver los problemas observados.

> [...]

> 2.7 La "carta técnica" de SPEC daba suficiente aviso a la Junta de que se estaban enfrentando a un problema de envergadura y que requería pronta atención. Cualquier persona razonable podía entender que la integridad del condominio peligraba de no tomar las medidas preventivas remediales correspondientes. Entre los miembros de la Junta se encontraban los codemandados De Pedro Montes y Romero. La señora Romero era la Presidenta de la Junta y el señor De Pedro Vicepresidente.

> [...]

> 2.12 El 23 de agosto de 2022, mientras se trabajaba la aprobación del financiamiento de la compraventa acordada entre el demandante y el codemandado De Pedro Montes, la firma de ingeniería SALO Engineering, en adelante "SALO", sometió a la Presidenta de la Junta, la codemandada Myrna Romero, una "Propuesta para

la preparación de Estudio Hidrológico e Hidráulico – y Diseño de Mejoras para detener la Inestabilidad de Terreno en el Complejo de Viviendas Villas de Parkville". Los miembros de la Junta incluyendo a los codemandados De Pedro Montes y Romero tuvieron acceso a este documento y no se le informó del mismo al demandante.

[...]

2.14 El atraso para finalizar el cierre fue por la espera de documentos que el banco solicitó sobre el estatus de unos sobre (sic) una demanda al Consejo de Titulares y sobre unos problemas de estructura. Según el mejor conocimiento del demandante la codemandada Myrna Romero, Presidenta de la Junta, ha indicado que el banco recibió copia del informe del Ingeniero Manuel Ochoa Lavergne de la firma SPEC Group fechado 29 de marzo de 2022. Luego de recibido ese informe el banco solicitó confirmación sobre si los trabajos de mitigación estaban completados. Tanto los miembros de la Junta de Directores, que incluyen a los codemandados De Pedro Montes y Romero, como el banco no divulgaron esas comunicaciones e información intercambiada al demandante.

[...]

4.1 Los codemandados Myrna Romero, en su carácter personal y como presidenta de la Junta de Directores del Condominio Villa de Parkville II, John Doe y la Sociedad Legal de Gananciales compuesta por ambos, responden solidariamente con el codemandado De Pedro Montes al demandante por sus actos dolosos y culposos.

4.2 La codemandada Romero conocía la condición del muro y las recomendaciones realizadas e informadas por las firmas de ingeniería SPEC y SALO y no divulgó la información al comprador y aquí demandante. Las actuaciones de la codemandada Romero constituyen dolo grave por parte de un tercero, conocido por el codemandado De Pedro Montes. Por lo que responde solidariamente con De Pedro Montes al demandante.

[...]

5.1 (...) **La información no divulgada al demandante le fue provista al banco por la administración del condominio y en particular por la codemandada Romero**.

[...]

7.1 El Consejo de Titulares es responsable por los daños y perjuicios en este caso pues su Junta de Directores sabía de los serios problemas que tenía el muro, los predios del complejo de vivienda y el peligro de colapsar desde marzo de 2022.

7.2 La Junta de Directores sabía del posible colapso del muro desde, por lo menos marzo de 2022 y nada hicieron sobre las recomendaciones del informe de la firma SPEC. De haber actuado como corresponde el colapso del 17 de septiembre [de 2022] se pudo haber evitado. Al no actuar en evitar lo que ocurrió la Junta de Directores fue totalmente negligente por lo que el Consejo de Titulares es responsable de los daños y perjuicios causados al demandante. (Énfasis suplido).[61]

Como se observa, las alegaciones de la demanda en cuanto a los codemandados Consejo de Titulares y la señora Romero giran en torno al presunto incumplimiento de éstos con la obligación de proveer al señor Carroccia información relacionada con los defectos estructurales del condominio y áreas aledañas, durante el proceso de compraventa de su unidad de vivienda. Sin embargo, de las propias alegaciones surge que el Consejo de Titulares y la señora Romero proveyeron al acreedor hipotecario involucrado en la transacción de compraventa del señor Carroccia la información solicitada sobre el condominio, incluyendo los estudios preparados por SPEC y SALO en cuanto al asunto. De ahí que las alegaciones de la demanda resulten insuficientes para imputar al Consejo de Titulares y la señora Romero que, de manera negligente o intencional, hubieran ocultado información sobre la condición del condominio cuando se les requirió.

Por otro lado, las disposiciones de la *Ley de Condominios de Puerto Rico,* supra, no le imponían al Consejo de Titulares y la señora Romero obligación alguna frente al señor Carroccia durante la compraventa que éste realizó con el señor De Pedro Montes. Ello pues, porque, a tenor con sus disposiciones, la obligación de actuar del Consejo de Titulares y su presidente es hacia los titulares de los apartamentos y, para la fecha en que el señor Carroccia entiende que dichos codemandados venían obligados a actuar, éste aún no era titular del apartamento EK-PH1 del condominio.

---

[61] Véase, *Demanda,* apéndice del *Certiorari,* Anejo 3, págs. 17-27.

Además, la Ley de Condominios establece que el adquirente de un apartamento acepta la condición manifiesta de los elementos comunes del condominio en la forma en que éstos se encuentren físicamente al momento de adquirir. De las alegaciones transcritas en forma alguna surge que, durante el proceso de la compra del apartamento, el señor Carroccia realizara gestión alguna para inspeccionar el área o solicitar directamente al Consejo de Titulares información relacionada con las condiciones comunales del complejo de viviendas.

Así pues, al tomar como ciertos los hechos expuestos en la demanda e interpretarlos de la manera más favorable para el señor Carroccia, concluimos que éste no expuso una reclamación que justifique la concesión de un remedio en contra del Consejo de Titulares y la señora Romero. De las alegaciones de la demanda no surge que el Consejo de Titulares y la señora Romero hubieran incumplido prestación alguna por la que se le pueda exigir responsabilidad por los daños reclamados por el señor Carroccia.

En su consecuencia, erró el TPI al negarse a desestimar la causa de acción incoada en contra del Consejo de Titulares y la señora Romero.

**IV.**

Por los fundamentos que anteceden, expedimos el auto de *certiorari* y revocamos la resolución recurrida. En consecuencia, decretamos la desestimación de la causa de acción instada en cuanto al Consejo de Titulares del Condominio Villas de Parkville II y la señora Myrna Romero, presidenta de la Junta de Directores de dicho complejo de viviendas. Se ordena la continuación de los procedimientos ante el Tribunal de Primera Instancia conforme a lo aquí resuelto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones